UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NEFRITITI S.

                Plaintiff,

v.                                                                                              1:20-CV-1436
                                                                                                 (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | KENNETH HILLER, ESQ.<br>ANTHONY ROONEY, ESQ.<br>IDA COMERFORD, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | JONATHAN KING, ESQ.<br>TIMOTHY RAZEL, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 19.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is granted to the extent it seeks remand for further proceedings, and the Commissioner's motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1980. (T. 155.) She received her GED. (T. 400.) Generally, Plaintiff's alleged disability consists of depression, anxiety, panic attacks, and lower back problems. (T. 155.) Her alleged disability onset date is January 1, 2013. (*Id*.) Her past relevant work consists of administrative clerk and residential supervisor. (T. 401.)

### B. Procedural History

On October 9, 2014, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 161.)[1] Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On August 8, 2017, Plaintiff appeared before the ALJ, Melissa Lin Jones. (T. 35-89.) On November 1, 2017, Plaintiff appeared at a supplemental hearing. (T. 90-109.) On November 6, 2017, ALJ Jones issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 168-187.) On January 16, 2019, the Appeals Council ("AC") issued an order, remanding the case for a new hearing. (T. 162-167.) On July 3, 2019, Plaintiff appeared before ALJ Jones. (T. 110-154.) On August 13, 2019, ALJ Jones issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 7-29.) On August 7, 2020, the AC denied Plaintiff's request

---

[1] Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs"). Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 12-23.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 9, 2014. (T. 12.) Second, the ALJ found Plaintiff had the severe impairments of cervical degenerative disc disease and cervicalgia; depression; anxiety; post-traumatic stress disorder ("PTSD"); gastritis; migraines and occipital neuralgia; and anemia. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 13.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a); except Plaintiff:

> can only occasionally climb ramps or stairs and she can never climb ladders, ropes, or scaffolds. [Plaintiff] cannot work at unprotected heights, around heavy moving mechanical parts, or in extreme cold. She is limited to simple routine repetitive tasks with occasional interactions with supervisors, coworkers, and the public. She requires a sit/stand option that allows her to sit for a total of four hours in an eight-hour workday and stand four hours in an eight-hour workday but she can remain on task while doing so and she remains sitting or standing for an average of 15 minutes at a time.

(T. 15-16.)[2] Fifth, the ALJ determined Plaintiff was unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 22-23.)

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job

3

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in evaluating Plaintiff's subjective complaints. (Dkt. No. 12 at 14-20.) Second, and lastly, Plaintiff argues there was a gap in the record, warranting remand. (*Id.* at 20-23.) Plaintiff also filed a reply in which she deemed no reply necessary. (Dkt. No. 15.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ properly evaluated the entire record, including Plaintiff's subjective complaints, in developing an RFC supported by substantial evidence. (Dkt. No. 14 at 7-12.) Second, and lastly, Defendant argues the record was complete and adequate for the ALJ to make a decision regarding disability. (*Id.* at 12-18.)

## III. RELEVANT LEGAL STANDARD

### B. Standard of Review

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The "substantial evidence" standard "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[I]t is . . . a very deferential standard of review - even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir.

---

duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 416.967(a).

2012).  In particular, it requires deference "to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).  It is not the Court's "function to determine *de novo* whether a plaintiff is disabled." *Brault,* 683 F.3d. at 447.  "In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted).  "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "The substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.' " *Brault,* 683 F.3d at 448.  The Court "require[s] that the crucial factors in any determination be set forth with sufficient specificity to enable [the reviewing Court] to decide whether the determination is supported by substantial evidence."  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (alterations and internal quotation marks omitted).

    **C.**    **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

    (1) whether the claimant is currently engaged in substantial gainful activity;
    (2) whether the claimant has a severe impairment or combination of

impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022).

## IV. ANALYSIS

### A. Subjective Complaints

Plaintiff argues that the ALJ erroneously rejected Plaintiff's testimony regarding the severity and frequency of her migraine headaches. (Dkt. No. 12 at 14-20.) Defendant argues the ALJ properly found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not fully consistent with the weight of the evidence. (Dkt. No. 14 at 9.) For the reasons outlined below, remand is necessary for a proper evaluation of Plaintiff's migraine frequency and symptoms.

The ALJ must employ a two-step analysis to evaluate a plaintiff's reported symptoms. *See* 20 C.F.R. § 416.929. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id*. § 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit a plaintiff's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) plaintiff's daily activities; (2) the location, duration, frequency, and intensity of plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side

6

effects of any medication plaintiff takes or has taken to relieve her pain or other symptoms; (5) other treatment plaintiff receives or has received to relieve her pain or other symptoms; (6) any measures that plaintiff takes or has taken to relieve her pain or other symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. § 416.929(c)(3)(i)-(vii).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause "some" of her alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (T. 17.)  The ALJ concluded Plaintiff's statements about migraine symptoms, were not "fully consistent" with objective evidence.  (T. 21.)  The ALJ reasoned Plaintiff's testimony, that she suffered four migraines a week, was not supported by the record because she "has not routinely presented to outpatient examinations in acute distress or demonstrating significant pain behavior." (*Id.*)

Here, the ALJ erroneous inferred Plaintiff's statements regarding the frequency of her migraine headaches were not supported based on lack of observed distress or significant pain behavior.  *Drake v. Saul*, 839 F. App'x 584, 588 (2d Cir. 2020).  The ALJ in *Drake*, like the ALJ here, concluded the frequency of plaintiff's headaches were not supported because no medical provider observed plaintiff with any signs of a headache in an office setting.  *Drake,* 839 F. App'x at 588.  The Court concluded the ALJ's inference was erroneous "because headaches are subjective symptoms not subject to objective testing." *Id.*  Therefore, the ALJ erred in concluding Plaintiff's testimony of migraine frequency was not supported because no source observed Plaintiff to be in

pain or distress. Further, substantial evidence does not support the ALJ's determination.

Substantial evidence "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Plaintiff's medical records are "replete with records documenting her complaints of migraines throughout the relevant time period so there is no lack of evidence supporting the frequency and severity of Plaintiff's migraines." *Nichole B. v. Comm'r of Soc. Sec.,* No. 6:20-CV-06723, 2022 WL 4462234, at *6 (W.D.N.Y. Sept. 26, 2022). Plaintiff received migraine care from providers with Dent Neurology during which time her migraine frequency decreased; however, she still experienced two to three migraines a week.

Plaintiff had a headache consultation on November 4, 2014.  (T. 777-781.)[3] Plaintiff reported daily headaches and approximately three "severe" headaches a week. (T. 777.)  She reported headaches "for many years," however stated her headaches had increased in frequency and severity.  (*Id.*)  Plaintiff was referred for an MRI to rule out other possible medical causes and started on medication.  (T. 779.)  On March 11, 2015, Plaintiff reported migraines every other day.  (T. 772.)  A provider noted Plaintiff had severe anemia which "has been associated with chronic exacerbation of headaches."  (*Id.*)  Plaintiff was referred to a hematologist and her headache medication was increased.  (T. 774.)  She was also prescribed medication for "breakthrough headaches."  (*Id.*)

On May 13, 2015, Plaintiff reported worsening headaches.  (T. 769.)  Plaintiff indicated daily headache and "at least" three migraines per week if not more.  (*Id.*)  She reported medication for acute treatment worked well.  (*Id.*)  Plaintiff reported receiving iron infusions to treat her iron deficiency.  (*Id.*)  At her appointment Plaintiff received an occipital nerve block.  (*Id.*)  Her medication was changed due to side effects involving memory.  (T. 771.)  A provider noted Plaintiff had greater than 15 headache days per month and greater than eight migraines per month, and that headaches lasted all day. (*Id.*)

On July 29, 2015, Plaintiff presented to Dent for Botox injections to treat her migraines.  (T. 766.)  On October 29, 2015, Plaintiff presented to Dent for another Botox treatment.  (T. 762-763.)  Plaintiff reported "some improvement" in her migraines with Botox.  (T. 763.)  Plaintiff reported her migraine frequency decreased from four to five a

---

[3]  Plaintiff's treating source, Jeanette Figueroa, M.D. with Jefferson Family Medicine, referred Plaintiff to Dent for headache treatment.  (T. 777.)

week to two to three a week.  (*Id.*)  On December 10, 2015, Plaintiff reported feeling "somewhat better" and that her migraines "improved in regard to frequency and severity." (T. 759.)  Plaintiff still reported two to three migraines a week and about one low-grade headache per week.  (*Id.*)  Since her previous visit Plaintiff also suffered a concussion.  (*Id.*)

On May 18, 2016, Plaintiff presented for Botox injections.  (T. 753.)  She reported improvement with prior injections and reported having eight headache free days per month if not less.  (*Id.*)  On June 28, 2016, Plaintiff reported two migraines a week and two to three low grade headaches per week.  (T. 747.)  She reported her medication worked well.  (*Id.*)  On August 19, and again on December 2, 2016, Plaintiff presented for Botox injections.  (T. 725, 739.)  At both appointments she informed her provider that her migraines improved with Botox, she had 12 to 16 headache free days per month, and overall was "25% improved."  (*Id.*)

On May 24, 2017, Plaintiff presented for Botox treatment.  (T. 709.)  At that time a provider noted prior to Botox treatment Plaintiff was averaging almost daily headaches and since Botox has been averaging 12 headache days per month.  (*Id.*)  Consistent with her reports to Dent providers, Plaintiff testified at her hearing that Botox injections helped, but "not 100 percent." (T. 137.)  Plaintiff testified to having four migraines a week.  (*Id.*)  She testified on migraine days her children are able to provide their own meals and she will cook during hours or days she feels well.  (T. 138.)  Therefore, the record consistently contained complaints of migraine headaches ranging from three to four times a week before treatment and a decrease in frequency to two to three a week

after treatment.  Based on the record, the Court cannot say that substantial evidence supported the ALJ's determination.

Overall, the ALJ improperly required observations of pain and distress in assessing Plaintiff's statements concerning the frequency of migraines.  Further, substantial evidence in the record supports Plaintiff's assertions that although treatment decreased the number of migraines she had each week, she still suffered multiple migraines a week.  Therefore, remand is required for the ALJ to properly assess Plaintiff's subjective complaints.

**B.  Plaintiff's Remaining Arguments**

Plaintiff argues the ALJ improperly rejected the only medical opinion in the record creating a gap which she failed to fill; and therefore, the ALJ erroneously determined Plaintiff's RFC absent a medical opinion.  (Dkt. No. 12 at 22.)

An ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion.  The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required."  *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").  Therefore, Plaintiff's assertion that the ALJ's RFC determination was the

11

product of legal error because it was not supported by a specific medical opinion is without merit.

However, due to the errors in assessing Plaintiff's subjective complaints of symptoms and frequency of her migraines, the ALJ will also need to make new findings related to Plaintiff's RFC and what other work Plaintiff retains the ability to perform in the national economy.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **<u>DENIED</u>**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:      February 27, 2023

William B. Mitchell Carter
U.S. Magistrate Judge